UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **ROBERT T. HOUSER, et al.,** | ) | **CASE NO. 1:21CV915** |
| | ) | |
| Plaintiffs, | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| vs. | ) | <u>**OPINION AND ORDER**</u> |
| | ) | |
| **POWERDOT, INC., et al.,** | ) | |
| | ) | |
| Defendants. | ) | |

<u>**CHRISTOPHER A. BOYKO, J.**</u>:

This matter comes before the Court upon the Motion (ECF DKT #38) of Defendant TheraBody, Inc. for Return of Property and for Sanctions under the Court's Inherent Authority. The Magistrate Judge issued his Report & Recommendation (ECF DKT #71) on April 17, 2023, recommending the Court grant the Motion in part and deny the Motion in part. The Report & Recommendation was issued following an Evidentiary Hearing held on March 15, 2023, and after consideration of Post-Hearing Briefs submitted on March 24, 2023.

Defendant Therabody, as successor in interest to Defendant PowerDot, Inc., filed comprehensive Objections on May 1, 2023 (ECF DKT #74). Plaintiffs Robert T. Houser and NeuroBridge, LLC filed their Response to the Objections on May 8, 2023 (ECF DKT #75).

For the following reasons, the Court adopts in part the Magistrate Judge's recommendation as outlined in this Order.

**I. BACKGROUND**

On July 14, 2020, Plaintiff Houser entered into an Employment Agreement with PowerDot, which incorporated a Proprietary Information and Inventions Agreement ("PIIA"). Plaintiff served as President of Healthcare and the second-highest ranking officer at PowerDot.  During Plaintiff's tenure, PowerDot's offices were located in California. Plaintiff worked remotely and never had a personal office in California. Plaintiff had a company email address, bob@powerdot.com, which he accessed from his personal devices(s).

On March 29, 2021, PowerDot sent a letter to Plaintiff stating: "[T]he Company has terminated your employment with Cause." "Cause" was a defined term in Plaintiff's Employment Agreement.

On April 15, 2021, Defendant TheraBody, Inc. acquired PowerDot. PowerDot became a subsidiary; and subsequently was dissolved.

At the time of his termination, Plaintiff had in his possession four PowerDot MT prototype "pucks" and an iPad used for controlling and working the prototype devices. Plaintiff also retained emails that were sent and/or received by his bob@powerdot.com email address during his employment.

It is undisputed that at some point, Plaintiff provided his counsel at Cohen Rosenthal & Kramer LLP with copies or data of email messages sent or received by his company email address during his employment, including emails sent to or received from PowerDot corporate counsel, Jonathan Muenkel. Plaintiff admits the possibility that emails forwarded to his

-2-

counsel more than ten times may have contained attorney-client privileged communications he had with PowerDot lawyers. One of his current attorneys, James Rosenthal, admitted at the evidentiary hearing that he reviewed these emails but did not recall the content of any one of them specifically.

Plaintiff also discovered an Outlook inbox on a computer in Hilton Head which contained PowerDot email communications. Plaintiff turned the inbox over to his counsel in October of 2022.

On October 31, 2022, Plaintiff's counsel produced the inbox in its entirety to Defendants in response to the First Set of Requests for Production. Attorney Rosenthal testified at the hearing that neither he nor anyone at the firm reviewed the contents of the inbox prior to producing it to Defendants. In addition, included in this production were emails between Plaintiff and his own litigation counsel which were inadvertently and mistakenly provided to Defendants' counsel.

On December 29, 2022, Defendants served and filed a "Privilege Log from Robert Houser Production." (ECF DKT #41). Each entry on Defendants' Privilege Log references a communication as to which Plaintiff was either the author, a direct recipient or a forwarded recipient during the course of his employment with PowerDot.

In the Motion for Return of Property and for Sanctions (ECF DKT #38), Defendants seek an order for the immediate return of property wrongfully withheld by Plaintiff following his termination: Apple iPad device; four "prototype pucks" (4MT Prototypes); and thousands of emails, including correspondence protected by PowerDot's attorney-client and work product privileges. Defendants move for relief pursuant to their Counterclaim for Conversion

and Ohio Revised Code 2737.03. Defendants also seek sanctions of dismissal or disqualification of Plaintiffs' counsel and attorney fees under the Court's inherent authority, in order to remedy the harm caused by Plaintiffs' bad faith and intentional misconduct.

Plaintiffs and their counsel counter that they have acted at all times reasonably and in good faith. Moreover, Plaintiffs assert that Defendants have failed to satisfy their burden for relief either under the Court's inherent authority or under Ohio Replevin and Conversion law.

## II. LAW AND ANALYSIS

**Standard of Review**

Pursuant to Fed.R.Civ.P. 72(b) and 28 U.S.C. § 636(b)(1)(c), the District Court shall review de novo any finding or recommendation of the Magistrate's Report and Recommendation to which specific objection is made. A party who fails to file an objection waives the right to appeal. *U.S. v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981). In *Thomas v. Arn*, 474 U.S. 140, 150 (1985), the Supreme Court held: "[i]t does not appear that Congress intended to require district court review of a magistrate judge's factual or legal conclusions, under a de novo or any other standard, when neither party objects to those findings."

Local Rule 72.3(b) recites in pertinent part:

> The District Judge to whom the case was assigned shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge.

Put another way, 28 U.S.C. § 636(b) and Local Rule 72.3 authorize the District Court Judge to address objections by conducting a de novo review of relevant evidence in the record before the Magistrate Judge.

The rules governing objections to magistrate judges' reports require parties to specifically object to the problematic aspects of the report and recommendation. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2) & (b)(3); LR 72.3(b). A party's failure to do so could result in the loss of appellate rights. *Andres v. Comm'r of Soc. Sec.*, 733 F. App'x 241, 244 (6th Cir. 2018). Overly-generalized objections do not satisfy the specific-objection requirement. *Spencer v. Bouchard*, 449 F.3d 721, 725 (6th Cir. 2006) abrogated on other grounds by *Jones v. Bock*, 549 U.S. 199 (2007). Neither does the regurgitation of the same merit brief before the magistrate judge constitute a sufficient objection. *Andres*, 733 F. App'x at 243.

**Privilege**

"The burden of establishing the existence of the privilege rests with the person asserting it." *U.S. v. Dakota*, 197 F.3d 821, 825 (6th Cir. 1999); see also *In re Grand Jury Investigation No. 83–2–35*, 723 F.2d 447, 450 (6th Cir. 1983).

"The attorney-client privilege is waived by voluntary disclosure of private communications by an individual or corporation to third parties." *U.S. v. Dakota*, 197 F.3d at 825; see also *In re Grand Jury Proceedings Oct. 12, 1995*, 78 F.3d 251, 254 (6th Cir. 1996).

**Inherent Authority**

A district court has the inherent power to sanction a party when that party exhibits bad faith. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–50 (1991). The "imposition of inherent power sanctions requires a finding of bad faith," *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 517 (6th Cir. 2002), or conduct "tantamount to bad faith," *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767 (1980). A plaintiff acts in bad faith

if his or her "conduct ... display[s] either an intent to thwart judicial proceedings or a reckless disregard for the effect of [the] conduct on those proceedings." *Bradley J. Delp Revocable Trust v. MSJMR 2008 Irrevocable Trust*, 665 F. App'x 514, 521-522 (6th Cir. 2016); *Schafer v. City of Defiance Police Dep't*, 529 F.3d 731, 737 (6th Cir. 2008).

**Dismissal**

A court may dismiss a complaint pursuant to its inherent authority when that is the only sanction which would properly address the misconduct, protect the integrity of the judicial process and deter other similar offenders. See *Bradley J. Delp Revocable Trust*, 665 F. App'x at 524.

**Disqualification of Counsel**

"Disqualification is "a measure of 'last resort' " so the Court should first consider alternatives to removing counsel." *In re Government Investigation*, 607 F.Supp.3d 762, 781 (S.D.Ohio 2022). "Motions to disqualify are viewed with disfavor and disqualification is considered a drastic measure which courts should hesitate to impose except when absolutely necessary." *Valley–Vulcan Mold Co. v. Ampco–Pittsburgh Corp.*, 237 B.R. 322, 337 (6th Cir. BAP 1999), aff'd 5 F.App'x. 396 (6th Cir. 2001).

When considering whether to disqualify counsel "courts must be sensitive to the competing public interests of requiring professional conduct by an attorney and of permitting a party to retain the counsel of his choice." *Hamrick v. Union Twp.*, Ohio, 81 F.Supp. 2d 876, 878 (S.D. Ohio 2000). Disqualification is appropriate, "only when there is a 'reasonable possibility that some specifically identifiable impropriety' actually occurred and, in light of the interest underlying the standards of ethics, the social need for ethical practice outweighs

the party's right to counsel of his own choice." *Kitchen v. Aristech Chemical*, 769 F.Supp. 254, 257 (S.D. Ohio 1991).

Upon considering all the evidence anew and applying the relevant law, the Court finds insufficient justification to wield its inherent authority.  The Court will not sanction Plaintiffs' conduct with dismissal or with disqualification of counsel.

In the March 29, 2021 termination letter, Plaintiff Houser was directed **to preserve and retain** all documents and electronically stored information in connection with his employment with the Company **until resolution of this matter**.  (Emphasis added).

According to the Proprietary Information and Inventions Agreement (PIIA) Plaintiff Houser executed, he was obligated, upon termination, to promptly return to the Company "all items containing or embodying Proprietary Information (including all copies)," except his own compensation records and "materials received in [his] capacity as an equity holder of the Company."  The latter excepted matter is undefined in the termination letter or in the PIIA.

In the termination letter and per the PIIA,

> All Inventions and all other business, technical and financial information (including, without limitation, the identity of and information relating to customers or employees) **that you develop, learn or obtain during the term of your employment that relate to the Company** or the business or demonstrably anticipated business of the Company or that are received by or for the Company in confidence, constitute "Proprietary Information."
> (Emphasis added).

Plaintiff did not believe that the emails were "proprietary" as covered by the PIIA. Plaintiff believed he acted in a manner he thought was consistent with the directives in his termination letter.  Even if Defendant argues that Plaintiff's justifications are not credible, or even if the Court may find them misguided, Plaintiff's conduct does not rise to the level of the

near criminality and cover-up illustrated in this Circuit's *Bradley J. Delp* case, *supra*. There, dismissal with prejudice was upheld as the only way to address that party's theft and to uphold the integrity of the court system.

Likewise, disqualification of Plaintiffs' counsel would be draconian under these circumstances. Balancing the public interest in ethical professional conduct and the right to representation by chosen counsel, the Court holds that disqualification is not "absolutely necessary" here and that other alternatives are available. *Valley–Vulcan Mold Co.*; *Hamrick*; *Kitchen*.

The Court declines to grant Defendant's requested sanctions of dismissal and disqualification of counsel. Those measures should be reserved for only the most egregious rules violations and abuses of the judicial system.

**Apple iPad and Prototype Pucks**

Defendants contend that TheraBody acquired PowerDot; and that PowerDot purchased and owned the Apple iPad and the 4 Mt Prototypes, which were loaned to Houser to utilize during his employment with PowerDot.

TheraBody, as successor in interest to PowerDot, filed an Ohio Counterclaim for conversion and seeks the return of the allegedly stolen PowerDot Property. Ohio Revised Code § 2737.03 provides that "[a]ny party to an action involving a claim for the recovery of specific personal property, upon or at any time after commencement of the action, may apply to the court by written motion for an order of possession of the property."

Under the Ohio statute, "[t]he right of possession of the property because of title or interest in it is an essential element in a Replevin action." *J&J Truck & Trailer Repair, Inc. v.*

*Cyphers*, No. 6625, 1980 WL 352585, *1 (2nd Dist. Montgomery, Dec. 12, 1980); R.C. § 2737.03(B); *Palmer v. Everson*, No. C-2-08-466, 2008 WL 5109195, *3 (S.D. Ohio, Dec.1, 2008) (an element of a claim for conversion under Ohio law is plaintiff's ownership or right to possession of the property at the time of the conversion).

Plaintiffs argue that there is insufficient proof of TheraBody's interest in the pucks and iPad. TheraBody acquired PowerDot after Plaintiff's termination; and TheraBody provides no documentary evidence showing what property and assets were acquired in that transaction.

Plaintiffs also counter that: "With respect to the prototype "pucks" and iPad: they contain or relate to NeuroBridge intellectual property which does not belong to PowerDot; Houser possessed them in the ordinary course of his employment." (Opposition Brief, ECF DKT #43 at 2). Further: "Neither Bob Houser or NeuroBridge had a relationship of any kind with Defendant TheraBody and Therabody's motion is devoid of any evidence that it has standing to assert a property interest in the contents of Houser's PowerDot email or the prototype "pucks" and iPad." *Id*.

> At the time of his wrongful and pretextual termination, Houser had in his possession 4 PowerDot MT prototype "pucks," which incorporated NeuroBridge proprietary intellectual property for direct current muscle stimulation, and an iPad the Company had acquired for the purpose of controlling, working and testing the prototypes. PowerDot never compensated Houser or NeuroBridge for that intellectual property despite an obligation to do so.

(*Id*. at 6).

To bolster their arguments, Defendants direct the Court's attention to the PIIA which Plaintiff Houser signed.

> In Section 4 of the PIIA:
>
> All Inventions and all other business, technical and financial information (including, without limitation, the identity of and information relating to customers or employees) that you develop, learn or obtain during the term of your employment that relate to the Company or the business or demonstrably anticipated business of the Company or that are received by or for the Company in confidence, constitute "Proprietary Information."
>
> In Section 2 of the PIIA:
>
> [I]f, when acting within the scope of my employment or otherwise on behalf of Company, I use or disclose my own or any third party's confidential information or intellectual property (or if any Invention cannot be fully made, used, reproduced, distributed and otherwise exploited without using or violating the foregoing), Company will have and I hereby grant Company a perpetual, irrevocable, worldwide royalty-free, non-exclusive, sublicensable right and **license** to exploit and exercise all such confidential information and intellectual property rights.

On the other hand, Plaintiff points to Defendants' obligation to compensate NeuroBridge for the use of its intellectual property, as set forth in his Employment Agreement at ¶ 9. That is, Houser agreed to "cause NeuroBridge to license any of its intellectual property or products to [PowerDot] **on terms which are not less favorable than those offered to any other party**." Moreover, the Employment Agreement gave PowerDot "the right to acquire NeuroBridge (or, at [PowerDot's] election, all of the assets of NeuroBridge)" for $3,000,000 or a mutually agreed-upon price. (Emphasis added).

In light of these strongly-held contrary positions; the competing contractual provisions in the PIIA versus the Employment Agreement; Defendants' pending Partial Summary Judgment Motion on the same subject; and the disputed issue of whether Defendants satisfy the "interest in property" aspect of the statute upon which they rely (§ 2737.03), the Court

declines to grant the Motion for Return of Property and agrees with the Magistrate Judge's recommendation for disposition of the Apple iPad and the Prototype Pucks.

Shortly after the Evidentiary Hearing held before the Magistrate Judge, the parties stipulated to a protocol for handling the Apple iPad and Prototype Pucks. Unfortunately, fearing a negative or unanticipated impact on their positions on the Motion at issue, the parties withdrew the stipulations a week later. Since the hearing testimony touched only slightly on the Apple iPad and pucks, and because the Court faces the task of resolving relevant legal and factual disputes presented in summary judgment briefing, it makes sense to put the parties' earlier stipulation in place pending the resolution of this matter.

**THEREFORE**,

The parties' agreed vendor, Vestige Digital Imaging, shall forensically image hardware (consisting of an iPad) and the accompanying software and data maintained on the iPad for use in these proceedings and not for any other purpose. The parties shall approve the Vestige imaging protocol prior to imaging. Vestige shall produce a forensically sound image of the iPad and its contents in a manner that is capable of *in camera* review by the Court. Vestige shall maintain a forensically sound copy of the image and shall provide a chain of custody documenting all efforts. The parties agree to share the costs involved in the imaging. Upon motion, the Court may conduct an *in camera* review of the forensic image to determine Plaintiffs' right of access.

The parties shall divide the four Prototype Pucks among themselves and preserve them for use in these proceedings and not for any other purpose. Any imaging or inspection of the pucks shall be performed to agreed forensic standards.

**Emails and Privilege**

In their Motion, Defendants seek an order for the immediate return of the emails generated in the course of Plaintiff Houser's employment with PowerDot, which Defendants contend include correspondence protected by attorney-client and work product privileges.

As the Court previously noted, "[t]he burden of establishing the existence of the privilege rests with the person asserting it." *U.S. v. Dakota*, 197 F.3d at 825; see also *In re Grand Jury Investigation No. 83–2–35*, 723 F.2d at 450.

On December 29, 2022, Defendants provided a Privilege Log to Plaintiffs' counsel. (ECF DKT #41). The Log identifies the documents wrongfully possessed by Plaintiff Houser and his counsel by date, author, recipient(s), subject description and privilege claimed.

Plaintiffs challenge the sufficiency and scope of the privilege asserted. The subject of the numerous emails could be a mix of legal and non-legal matters. The communications may constitute "materials received in [Houser's] capacity as an equity holder of the Company," which he would be entitled to retain upon termination per his Employment Agreement. Plaintiffs insist that of the 4,600 emails Defendants claim were stolen, Defendants never identify how many are in fact privileged; which contain alleged protectible confidential, proprietary or trade secret information; which recipients may have been third-parties, thus destroying any attorney-client privilege; which emails actually or potentially prejudice Defendants; or which ones give Plaintiffs an unfair advantage in this lawsuit.

Of note, at the Hearing, Defendants' counsel conceded that not all communications between a lawyer and a client are privileged, and not all documents listed on its "Privilege Log" are privileged. (Transcript, ECF DKT #64 at 93, 145).

The Court has been placed in an untenable position. The Court cannot be expected to determine the propriety of sanctions for breach of privilege "unless the parties have first properly asserted privilege/protection, then provided sufficient factual information to justify the privilege/protection claimed for each document, and, finally, met and conferred in a good faith effort to resolve any disputes without court intervention. *United States v. Zolin*, 491 U.S. 554, 571–72, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989)." *In re Haynes*, 577 B.R. 711, 738 (E.D.Tenn. 2017).

The Court approves of the methodology set out in *Haynes*, 577 B.R. at 740, and applies it here as follows:

Defendants have the burden of establishing privilege, which they have initially met by providing a Privilege Log. However, Defendants cannot rest on that Privilege Log when Plaintiffs challenge the sufficiency of the assertion of privilege and Defendants' counsel have admitted that not all listed documents are privileged. Now, the burden shifts back to Defendants to revise the Log and to establish "an evidentiary basis—by affidavit, deposition transcript, or other evidence—for each element of each privilege/protection claimed for each document or category of document." If Defendants make that necessary showing and Plaintiffs continue to contest the assertion of privilege, then the dispute is ripe for submission by written motion to the Court, which after looking at the evidentiary support offered, can either rule on the merits or order that the disputed unredacted documents be produced for *in camera* inspection.

Furthermore, after independent *de novo* review, the Court agrees with the Magistrate Judge's approach for emails that contain trade secrets or proprietary information. Defendants

shall identify the specific emails believed to contain trade secrets and/or proprietary information and which should be designated "attorneys' eyes only" pursuant to the parties' Protective Order. (ECF DKT #37). Those materials shall be handled as agreed under the terms of the Protective Order until this case is resolved.

### III. CONCLUSION

Pursuant to Fed.R.Civ.P. 72(b) and 28 U.S.C. § 636(b)(1)(c), the Court adopts in part the Magistrate Judge's Report & Recommendation (ECF DKT #71) and denies Defendants' Motion for Return of Property and Motion for Sanctions (ECF DKT #38) as outlined in this Opinion and Order.

**IT IS SO ORDERED.**

**DATE:** 7/27/2023

**CHRISTOPHER A. BOYKO**
**United States District Judge**