UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **ROBERT T. HOUSER, et al.,** ) | CASE NO. 1:21CV915 |
| ) | |
| Plaintiffs, ) | JUDGE CHRISTOPHER A. BOYKO |
| ) | |
| vs. ) | <u>OPINION AND ORDER</u> |
| ) | |
| **POWERDOT, INC., et al.,** ) | |
| ) | |
| Defendants. ) | |

<u>**CHRISTOPHER A. BOYKO, J.**</u>:

This matter comes before the Court upon the Motion (ECF DKT #95) of Defendant Therabody, Inc. for Protective Order. The Magistrate Judge issued an Order (ECF DKT #106) denying the Motion and further ordering that intellectual property information shall be produced as "Highly Confidential - Attorneys' Eyes Only" pursuant to the parties' Stipulated Protective Order (ECF DKT #37). Defendant Therabody as successor in interest to Defendant PowerDot, Inc. filed Objections/Appeal (ECF DKT #119) to Magistrate Judge's Recommendation [*sic*] to Deny Therabody's Motion for a Protective Order, pursuant to Fed.R.Civ.P. 72(a); 28 U.S.C. § 636(b)(1)(A); L.R. 72.3(a). Plaintiffs Robert T. Houser and NeuroBridge, LLC filed a Response (ECF DKT #123).

For the following reasons, the Court UPHOLDS the decision of the Magistrate Judge denying Defendant's Motion for Protective Order (ECF DKT #95), as the ruling is not clearly erroneous nor contrary to law.

**I. BACKGROUND**

On July 14, 2020, Houser signed an Employment Agreement with PowerDot, agreeing to serve as "President PowerDot Healthcare" and to report to the CEO. If PowerDot terminated Houser "without Cause" or if Houser resigned "with Good Reason" after his nine-month initial term, the Employment Agreement provided him with severance benefits, including payment of his then-current salary, continuance of health insurance premiums for an additional nine-month period and Time-Based Option Shares calculated as if he had completed an additional nine months of continuous service.

One of Houser's obligations, outlined in Paragraph 9 of the Employment Agreement, was to "cause NeuroBridge to license any of its intellectual property or products to [PowerDot] on terms which are not less favorable than those offered to any other party." The Agreement gave PowerDot "the right to acquire NeuroBridge (or, at [PowerDot's] election, all of the assets of NeuroBridge)" for $3,000,000 or a mutually agreed-upon price.

Houser and PowerDot also entered into a Proprietary Information and Inventions Agreement ("PIIA"), appended to Houser's Employment Agreement. The PIIA gave PowerDot ownership of "all right, title, and interest . . . relating to any and all inventions" made by Houser during his employment with PowerDot; but excluded inventions "made or conceived or reduced to practice, in whole or in part" by Houser prior to his employment with PowerDot. PowerDot was granted "a perpetual, irrevocable, worldwide royalty-free, non-exclusive, sublicensable right and license to exploit and exercise" "any third party's confidential information or intellectual property" that Houser used or disclosed "when acting within the scope of [his] employment."

Effective September 7, 2020, Houser assumed his role as President and began transitioning the NeuroBridge IP to PowerDot. However, Houser contends that PowerDot failed to compensate NeuroBridge for the IP.

On March 29, 2021, PowerDot's counsel sent Houser a letter, terminating his employment "with Cause" under section 6(e) of his Employment Agreement. PowerDot purportedly had cause to terminate Houser based upon the discovery of the undisclosed Paycheck Protection Program ("PPP") loan Houser obtained for his wholly-owned side business, Buckeye 88 Consulting, LLC; and because of Houser's evasiveness and lack of cooperation with PowerDot's investigation of suspected PPP fraud.

On April 15, 2021, Defendant Therabody, Inc. acquired PowerDot. PowerDot became a subsidiary; and subsequently was dissolved.

The above-captioned lawsuit was initiated on May 3, 2021. Following the Court's ruling on PowerDot's Motion to Dismiss, PowerDot filed an Answer and Counterclaims alleging Breach of Contract; Breach of Fiduciary Duty; and Conversion. Plaintiffs Houser and NeuroBridge filed their Second Amended Complaint on September 16, 2022, adding Therabody, Inc. as a Defendant. On November 7, 2023, with leave of Court, Defendants filed their Amended Answer to the Second Amended Complaint, Affirmative Defenses and Amended Counterclaims.

In Count One of the Second Amended Complaint (ECF DKT #30), Plaintiffs allege that Defendant PowerDot breached the Employment Agreement by:

- terminating Houser's employment before the end of the guaranteed term of nine months;

- failing to pay contracted-for salary and benefits;

- failing to pay contracted-for severance;

- failing to recognize Houser's vested stock options and to accelerate the vesting of options upon a change in control;

- **failing to fulfill its obligations to compensate Houser for intellectual property to which NeuroBridge had the rights and which PowerDot acquired and used as set forth in paragraph 9 of his Employment Agreement**; and

- purporting to terminate his employment "with Cause" when no cause existed.

Defendants moved for Partial Summary Judgment (ECF DKT #53) in their favor on the First Count (Breach of Employment Contract) in the operative Second Amended Complaint; and also requested that the Court enter judgment in their favor on the First and Third Counts in their Counterclaims against Houser for Breach of Employment Contract and Conversion, respectively. In the August 30, 2023 Opinion and Order (ECF DKT #78), the Court denied Defendants' Motion for Partial Summary Judgment. Specifically, the Court stated:

> Upon consideration of the arguments and evidence presented, the Court finds that there are material issues of fact which militate against granting judgment to Defendants on Plaintiff's Breach of Contract Claim. Moreover, the Court holds that it would be premature to rule dispositively when both sides concede that fact discovery (including Plaintiffs' depositions) has not been completed. (*Id.* at 9).

On March 6, 2024, Defendant Therabody filed the Motion (ECF DKT #95) for Protective Order which is the subject of the Magistrate Judge's Order at bar. Defendant asserts that discovery regarding its intellectual property should be disallowed and that a protective order should be granted because discovery of Defendant's trade secrets and other intellectual property is not "proportional" to the needs of the case. According to Defendant, this Court has dismissed all Intellectual Property Claims; Houser's deposition "confirms that he does not own any

intellectual property;" and "Plaintiffs incorrectly interpret paragraph 9 of Houser's Employment Agreement to require PowerDot to purchase NeuroBridge and any alleged intellectual property, instead of merely having the option to do so."

After considering the parties' briefing and after holding a hearing on the pending discovery issues, the Magistrate Judge issued an Order (ECF DKT #106) on March 19, 2024, and concluded as follows:

> For the foregoing reasons, the Motion for Protective Order (Doc. No. 95) is DENIED. However, to address Defendants' concerns about preserving the secrecy of its trade secrets and any potential competitive harm, and to protect Defendants' trade secrets and proprietary information, the Court orders that the intellectual property information shall be produced as "Highly Confidential - Attorneys' Eyes Only" pursuant to the Stipulated Protective Order in this case (Doc. No. 37). (*Id*. at 8).

The matter is now ripe for the Court's consideration of Defendant's Objections/Appeal (ECF DKT #119) and Plaintiffs' Response (ECF DKT #123).

## II. LAW AND ANALYSIS

**Standard of Review**

When a Magistrate Judge's decision, on a non-dispositive matter, is challenged it will be reversed only if it is "clearly erroneous or contrary to law." See 28 U.S.C.§ 636(b)(1)(A); Fed.R.Civ.P. 72(a). Rule 72(a) of the Federal Rules of Civil Procedure provides that:

> *When a pretrial matter not dispositive of a party's claim or defense* is referred to a magistrate judge to hear and decide, the magistrate judge must promptly conduct the required proceedings and, when appropriate, issue a written order stating the decision. A party may serve and file objections to the order within 14 days after being served with a copy. A party may not assign as error a defect in the order not timely objected to. The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law.

Fed.R.Civ.P 72(a) (emphasis added).

The "clearly erroneous" standard applies only to factual findings made by the Magistrate Judge, while legal conclusions will be reviewed under the more lenient "contrary to law" standard. *Gandee v. Glaser*, 785 F.Supp. 684, 686 (S.D. Ohio 1992), aff'd, 19 F.3d 1432 (6th Cir. 1994); *see also United States v. Curtis*, 237 F.3d 598, 607 (6th Cir. 2001) ("clear error is a term that courts apply to the review of questions of fact," while "the determination of whether or not an order is contrary to law is necessarily a purely legal inquiry"). The Sixth Circuit has held that, "a finding of fact is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Harlamert v. World Finer Foods, Inc.*, 489 F.3d 767, 771 (6th Cir. 2007), quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 398 (1948). A Magistrate Judge's order is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure. *Gandee*, 785 F.Supp. at 686.

**Discovery**

The Magistrate Judge ruled on a pre-trial discovery dispute. Fed.R.Civ.P. 26(b)(1) defines the scope of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Determining the scope of discovery is within the Court's discretion. *Bush v. Dictaphone Corp.*, 161 F.3d 363, 367 (6th Cir.1998). As the United States Court of Appeals for the Sixth Circuit has recognized, "[t]he scope of discovery under the Federal Rules of Civil Procedure is

traditionally quite broad." *Lewis v. ACB Bus. Serv., Inc.*, 135 F.3d 389, 402 (6th Cir.1998). Stated otherwise, the Court construes discovery under Rule 26 "broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

Defendant's Motion for Protective Order in the within discovery dispute is non-dispositive. Therefore, the Court will review the Magistrate Judge's findings applying a "clearly erroneous" or "contrary to law" standard of review. *See Curtis*, 237 F.3d at 603 ("a district court shall apply a clearly erroneous or contrary to law standard of review for the non-dispositive preliminary measures of § 636(b)(1)(A)").

**Preliminary Matters**

The Court is troubled by Defendant's continued reference to the Magistrate Judge's "Recommendation" rather than the Magistrate Judge's "Order," as it is clearly designated in the document identified as ECF DKT #106.

The Court also finds problematic Defendant's repeated misapprehension of the Court's Opinion and Order on the Motion to Dismiss (ECF DKT #23) and the Court's Partial Summary Judgment ruling (ECF DKT #78) on Intellectual Property Claims in this litigation. Despite Defendant's incorrect assertions, the Court dismissed Plaintiffs' state common-law Claim for Misappropriation of Intellectual Property as preempted by Ohio's Uniform Trade Secrets Act, and Plaintiffs' Misappropriation of Intellectual Property Claim under the Ohio Uniform Trade Secrets Act for insufficient allegations to support the elements of the Claim. However, Plaintiffs' Breach of Contract Claim survived dismissal. In addition, as recited earlier in this Opinion, Defendant's Motion for Partial Summary Judgment on the Breach of Contract Claim in

the Second Amended Complaint was denied due to the existence of genuine issues of material fact. Plaintiffs' pending Breach of Contract Claim encompasses Defendant's alleged failure "to fulfill its obligations to compensate Houser for intellectual property to which NeuroBridge had the rights and which PowerDot acquired and used as set forth in paragraph 9 of his Employment Agreement."

Defendant's unceasing misstatements either suggest ignorance of the proceedings or disrespect for the Court – neither of which will be tolerated going forward.

**Defendant Therabody's Objections**

Defendant objects to the Magistrate Judge's Order denying its Motion for Protective Order to preclude "intellectual property" discovery on the following grounds:

(1) "the Recommendation's [sic] finding that Judge Boyko's prior order dismissing all intellectual property claims (misappropriation of trade secrets and intellectual property (collectively, "IP")) did not foreclose the same IP claim cast as a breach of Houser's employment contract is clearly in error;"

(2) "in ruling on this discovery motion, the Magistrate Judge decided in error that the Court was not permitted to consider "the merits" of Plaintiffs/CounterDefendant's breach of IP contract claim (including Plaintiffs/CounterDefendant's failure and inability to identify their alleged IP before embarking on a wide-ranging fishing expedition into Therabody's genuine IP);"

(3) "the Magistrate Judge erred in finding that Therabody did not meet its burden of demonstrating undue burden, disproportionality and prejudice supporting its motion for protective order."

**Findings and Conclusions Are Not Clearly Erroneous or Contrary to Law**

(1) As addressed earlier, the Court's July 11, 2022 Opinion and Order specifically dismissed Plaintiffs' Count Six and Count Seven Claims for Misappropriation of Intellectual Property; but denied dismissal of Count One - Breach of Employment Contract, which included the allegation that Defendants failed to compensate Plaintiffs for NeuroBridge Intellectual Property that Defendants acquired and used. Therefore, Defendant's objection to the Magistrate Judge's finding that Plaintiff's Breach of Contract Claim remains pending is unfounded.

(2) The Magistrate Judge was justified under the law and correctly held that the Court does not consider the merits of a claim when deciding a discovery issue. As noted in *Brahmamdam v. Trihealth Inc.*, 2021 WL 2555066, *2 (S.D. Ohio Jun. 22, 2021), the court does not consider the underlying merits of a party's claims in evaluating a motion for protective order or a motion to compel.

> [A]rguments directed at the merits of a party's claims or the viability of affirmative defenses should be addressed by way of dispositive motion or at trial and not during a discovery dispute. *Stafford v. Jewelers Mut. Ins. Co.*, No. 3:12-cv-50, 2012 WL 6568325, at *3 (S.D. Ohio Dec. 17, 2012) (citations omitted). *See also South Pointe Wholesale, Inc. v. Vilardi*, No. 1:17-cv-52, 2018 WL 1721936, at *3 (W.D. Ky. Apr. 9, 2018) ("the scope of a motion to compel ... is confined to an evaluation of whether the discovery sought is relevant to a claim or defense")." *Brahmamdam, id.* at *2.

Moreover, the focus of the federal discovery rules, particularly Fed.R.Civ.P. 26 is that parties "may obtain discovery regarding any nonprivileged matter that is **relevant** to any party's claim or defense." (Emphasis added).

Therefore, the Court rejects Defendant's objection as misguided. Plaintiffs' Breach of Contract Claim remains viable and relevant. The merits of the Breach of Contract Claim are not

-9-

properly evaluated at the discovery stage, but may be addressed if and when a dispositive motion, supported by undisputed material facts in evidence, is presented.

(3) The Magistrate Judge did not err in finding that Defendant failed to satisfy its burden of showing clear, serious injury justifying a protective order. "The burden of establishing good cause for a protective order rests with the movant." *Smith v. Gen. Mills, Inc.*, No. C2-04-705, 2006 WL 7276959, at *1-2 (S.D. Ohio Apr. 13, 2006) (quoting *Nix v. Sword*, 11 Fed. App'x 498, 500 (6th Cir. 2001)). "To show good cause, a movant for a protective order must articulate specific facts showing a 'clearly defined and serious injury' resulting from the discovery sought and cannot rely on mere conclusory statements." *TERA II, LLC, et al. v. Rice Drilling D, LLC*, et al., No. 2:19-cv-02221, 2024 WL 1833910, *2 (S.D. Ohio Jan. 26, 2024) (quoting *Smith*; *Nix*).

In its Motion for Protective Order, Defendant states in a conclusory fashion: "Therabody has actual trade secrets and proprietary research, and Mr. Houser may be the last person to whom Therabody wants to disclose this secret information." -and- "Mr. Houser has a track record of peddling one company's intellectual property to another without the owner's permission." (ECF DKT #95 at 7). Defendant also offers the Declaration of Therabody's General Counsel which states at ¶ 12: "Any revelation or disclosure of these Trade Secrets to outside parties would irreversibly compromise their intrinsic economic value and would thus significantly impair Therabody's competitive edge and market positioning relative to their acquisition of PowerDot." (ECF DKT #95-5). These statements, while possibly accurate, do not reach the level of demonstrating clearly-defined injury entitling Defendant to a protective order; nor do they show that the parties' Stipulated Protective Order (ECF DKT #37) will not provide sufficient safeguards.

In its Objections, Defendant accuses the Magistrate Judge of "ignoring the record" that Plaintiffs "engaged in unlawful self-help discovery, refusing to return privileged material and IP unlawfully retained." (ECF DKT #119 at 15). In point of fact, Defendant is the one intentionally disregarding the record of this case, where the Court in its Opinion and Order issued on July 27, 2023, ruled out these very claims lodged against Plaintiffs (ECF DKT #77).

Lastly, but not less significantly, Defendant correctly cites to its initial burden as the movant to "articulate specific facts that show a clearly defined and serious injury resulting from the discovery sought." (ECF DKT #119 at 16). Yet, Defendant proceeds in the succeeding pages to turn the standard on its head, challenge Plaintiffs' supposed failure to sustain *their* burden and call Plaintiffs out for "frustrating the policy goal of resolving private disputes in a timely manner." Rather, the Court finds that Defendant bears responsibility for stalling the resolution of this case at every turn.

Defendant, as the moving party, has failed to demonstrate good cause for the issuance of a protective order. Defendant's third objection is without merit.

### III. CONCLUSION

For these reasons, the Court UPHOLDS the decision (ECF DKT #106) of the Magistrate Judge denying Defendant's Motion for Protective Order (ECF DKT #95), as the ruling is not clearly erroneous nor contrary to law.

**IT IS SO ORDERED.**

**DATE: May 6, 2024**              s/Christopher A. Boyko
                                    **CHRISTOPHER A. BOYKO**
                                    **UNITED STATES DISTRICT JUDGE**